

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PARKWAY SALES AND LEASING, | § | CASE NO. 07-40713-BTR |
| INC., | § | (Chapter 7) |
| | § | |
| DEBTOR. | § | |
| _____ | § | |
| AUTOMOTIVE FINANCE | § | |
| CORPORATION, DEALER SERVICES | § | |
| CORPORATION and CHRISTOPHER | § | |
| MOSER, TRUSTEE, | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| vs. | § | ADV. PROC. NO. 09-4049 |
| | § | |
| RAY HUFFINES CHEVROLET, INC., | § | |
| HUFFINES CHRYSLER-PLYMOUTH, | § | |
| INC., d/b/a HUFFINES HYUNDAI | § | |
| PLANO, NEW TEXAS AUTO | § | |
| AUCTION SERVICES, L.P., d/b/a | § | |
| DALLAS AUTO AUCTION, d/b/a | § | |
| MANHEIM DALLAS, and JOHN DOE | § | |
| | § | |
| DEFENDANTS. | § | |

## <u>MEMORANDUM OPINION</u>

The Plaintiffs, Automotive Finance Corporation ("<u>AFC</u>"), Dealer Services

Corporation ("<u>DSC</u>"), and Christopher Moser, in his capacity as Chapter 7 trustee,

initiated this action by filing an adversary complaint on April 3, 2009.  Two of the

Defendants, Ray Huffines Chevrolet, Inc. and Huffines Chrysler-Plymouth, Inc.

(collectively, "<u>Huffines</u>"), responded to the complaint by filing a Motion to Dismiss

pursuant to Federal Rule of Civil Procedure ("<u>Rule</u>") 12(b)(1) and (6), as adopted and

applied to this adversary proceeding by Federal Rule of Bankruptcy Procedure

("Bankruptcy Rule") 7012, and under the theory of estoppel.  The remaining named Defendant, New Texas Auto Auction Services, L.P. d/b/a Dallas Auto Auction d/b/a Manheim Dallas ("DAA"), subsequently filed an answer to the complaint and joined in the Motion to Dismiss.

The Plaintiffs filed an opposition to the Motion to Dismiss and requested that they be permitted to amend their complaint if the Court grants any portion of the Motion.  The Plaintiffs attached several affidavits to their opposition to the Motion to Dismiss in which they attempted to explain certain alleged contradictions between their complaint and the documents attached to their complaint, among other things.  The Defendants filed an objection to the admission of the Plaintiffs' affidavits on numerous grounds.  At the conclusion of the hearing on the Motion to Dismiss, the Court took the Defendants' Motion to Dismiss and their objections to the Plaintiffs' affidavits under advisement.

## I. RELEVANT BACKGROUND

Parkway Sales and Leasing, Inc. ("Parkway") was an automobile dealer engaged in the business of leasing and selling new and used automobiles.  In February 2007, Huffines filed suit in state court against Parkway based on Parkway's alleged failure to pay Huffines for an undisclosed number of vehicles transferred to Parkway in January 2007 (the "Huffines Vehicles").  On March 12, 2007, Huffines obtained a Final Default Judgment in state court against Parkway wherein Huffines was awarded $215,518 in liquidated damages and $7,547 in attorneys' fees.

Parkway filed a petition for relief in this Court under Chapter 7 of the Bankruptcy Code on April 4, 2007.  According to the Chapter 7 trustee, this is an asset case.  On June 24, 2007, the Court entered an order setting September 20, 2007, as the last day for non-

2

governmental creditors to file their proofs of claim.  Plaintiff AFC filed proof of its secured claim on May 18, 2007, and Plaintiff DSC filed proof of its secured claim on September 19, 2007.  Defendant Huffines filed proof of its claim on July 11, 2008. Defendant DAA has not filed proof of any claim against Parkway's estate.

Insurers Indemnity Corporation initiated an adversary proceeding on or about May 29, 2007.  In that adversary proceeding, Insurers Indemnity Corporation filed an interpleader with respect to Parkway's dealer bond.  Huffines referenced the Huffines Vehicles in its answer to the interpleader and asserted a claim for all valid bank drafts drawn by Parkway "for the purchase of motor vehicles and transfer of good title to each motor vehicle …."  On August 27, 2007, the Court entered a judgment in the amount of $19,819.06 in favor of Huffines.

On March 3, 2009, the Chapter 7 trustee objected to the claims of AFC and DSC on the grounds that the trustee had not administered the collateral securing the claims. The Chapter 7 trustee alleged that the claims did not qualify as secured claims under 11 U.S.C. § 506(a) of the Bankruptcy Code and, therefore, requested that the Court disallow the claims.  AFC responded to the objection, and a hearing on the Chapter 7 trustee's objection to AFC's claim is currently scheduled for September 9, 2009.  DSC did not respond to the Chapter 7 trustee's objection.  Accordingly, on March 27, 2009, the Court granted the objection as unopposed.  The order sustaining the Chapter 7 trustee's objection to DSC's claim states that the claim "is disallowed as a secured claim."  Such order was not appealed.

The Plaintiffs initiated this adversary proceeding on April 3, 2009.  In Count 1 of their adversary complaint, AFC, DSC and the Chapter 7 trustee seek a declaratory

judgment regarding the extent, validity, and priority of the secured interests claimed by AFC and DSC. In Counts 2 - 4, AFC and DSC seek damages from Huffines and DAA based on claims of tortious interference with contract, conversion, and civil conspiracy. In Counts 5 - 6, the Chapter 7 trustee asserts claims against Huffines and DAA for preferential transfers and seeks turnover of property of the estate.

DAA responded to the Plaintiffs' adversary complaint on May 4, 2009. In its answer, DAA demanded a jury trial. Although this Court is not authorized to conduct jury trials, none of the parties have objected to this Court's jurisdiction over the Motion to Dismiss. *See, e.g., Official Comm. of Unsecured Creditors v. Schwartzman (In re Stansbury Poplar Place, Inc.)*, 13 F.3d 122, 128 (4th Cir. 1993) (holding that until a proceeding is ready for trial, a bankruptcy court may continue to oversee pre-trial matters); *Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 783-88 (9th Cir. 2007) (holding that, after a party identifies a valid right to a Seventh Amendment jury trial in bankruptcy proceedings, "the bankruptcy court may retain jurisdiction over the action for pre-trial matters."). The Court, however, recommends that the District Court withdraw the reference following the resolution of the Motion to Dismiss for the reasons discussed below.

## II. DISCUSSION

In the Motion to Dismiss, the Defendants urge this Court to dismiss all of the claims asserted by AFC and DSC in this adversary proceeding. The Defendants also urge this Court to dismiss the claim asserted by the Chapter 7 trustee in Count 1 of the adversary complaint, leaving only the Chapter 7 trustee's claims for the recovery of preferential transfers and turnover. The Defendants argue that AFC and DSC have failed

to establish standing and, therefore, grounds exist to dismiss their claims pursuant to Rule 12(b)(1).  The Defendants further argue that AFC and DSC have failed to state claims upon which relief can be granted due to their lack of standing and, therefore, grounds exist to dismiss their claims pursuant to Rule 12(b)(6).  Finally, the Defendants argue that "[d]ismissal of the Chapter 7 trustee's claim under Count 1 is proper because no declaratory judgment regarding the amount of money purportedly owed the Plaintiffs can be made based on the alleged secured liens of AFC and DSC, in view of the fact that both AFC and DSC lack standing and have failed to state a claim upon which relief can be granted."  Motion to Dismiss, p. 3, ¶ 4.

Article III of the Constitution limits the subject matter jurisdiction of federal courts to cases and controversies.  A plaintiff, therefore, must demonstrate "a causal connection between the injury and the conduct complained of" to have standing in a federal court.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).  The party seeking to invoke a federal court's jurisdiction has the burden of proving standing.  *See, e.g., In re La Sierra Financial Services, Inc.,* 290 B.R. 718, 726 (9th Cir. BAP 2002) ("The party asserting standing bears the burden of proving it."); *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2nd Cir. 1995) ("The burden to establish standing remains with the party claiming that standing exists"); *E.F. Hutton & Co., Inc. v. Hadley,* 901 F.2d 979, 984 (11th Cir. 1990) ("When standing has been contested, it is the burden of the party claiming standing"); *Zahn v. Yucaipa Capital Fund,* 218 B.R. 656, 662 (D. R.I. 1998) ("The burden of proof must be carried by the party whose standing is questioned.").  Since a motion to dismiss a case for want of standing challenges a court's ability to make any determination on the merits, standing must be resolved as a

preliminary matter.  *See Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001) (holding that "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits").

### A. Facial and Factual Attacks on Standing

The parties in this case disagree on the proper procedure for deciding the Plaintiffs' standing.  The Defendants seek to limit the Court's inquiry to the adversary complaint, the documents attached to the complaint, and undisputed facts of which the Court may take judicial notice.  The Plaintiffs, on the other hand, seek to introduce new factual allegations in support of their standing.

In *Warth v. Seldin*, 422 U.S. 490, 501-02 (1975), the Supreme Court outlined the following procedure for determining whether a plaintiff has standing:

> For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. *E.g., Jenkins v. McKeithen,* 395 U.S. 411, 421-422 [89 S.Ct. 1843, 1848-1849, 23 L.Ed.2d 404] (1969). At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing. If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.

The Fifth Circuit has held that this procedure encompasses two modes of challenging a plaintiff's standing -- a "facial" attack and a "factual" attack.  *See Patterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981); *Williamson v. Tucker,* 645 F.2d 404, 414 (5th Cir. 1982); *Lewis v. Knutson*, 699 F.2d 230 (5th Cir. 1983).  In a facial attack, the defendant's motion to dismiss is based on the face of the complaint and the documents attached to the complaint.  The court need look only to the sufficiency of the allegations

6

in the complaint, which are presumed to be true, in order to decide a facial attack on standing. *See Patterson,* 644 F.2d at 523. In contrast, in a factual attack, the defendant's motion to dismiss is based on matters outside the complaint. *See id.* No presumptive truthfulness attaches to the plaintiff's allegations in a factual attack, and the burden shifts to the plaintiff to prove subject matter jurisdiction by a preponderance of the evidence by submitting facts through some evidentiary method. *See id.*

In this case, the Defendants' challenge to AFC's standing is facial -- the Defendants cite to and rely upon the complaint and the documents attached to the complaint in their Motion to Dismiss the claims asserted by AFC. *See, e.g., Patterson,* 644 F.2d at 523. Although the Defendants have attached a copy of this Court's order disallowing DSC's secured claim to their Motion to Dismiss in support of their challenge to DSC's standing, the Court can take judicial notice of this document without transforming the Motion to Dismiss into a factual attack. The Fifth Circuit has compared and analogized facial attacks under Rule 12(b)(1) to motions to dismiss for failure to state a claim under Rule 12(b)(6). *See, e.g., Williamson*, 645 F.2d at 412. In a motion to dismiss for failure to state a claim, a court may "consider matters of which [it] may take judicial notice," *Sifuentes-Barraza v. Garcia,* 252 F.Supp.2d 354 (W.D. Tex. 2003) (citing *Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1017-18 (5th Cir. 1996)), and matters of public record without converting the motion into a motion for summary judgment. *Id.* (citing 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1990)).

### B. The Plaintiffs' Allegations

The quantum and type of proof that must be presented by a plaintiff in response to an attack on standing depends upon the stage of the proceeding. The plaintiff's standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. At the pleading stage, as in this case, "general factual allegations of injury resulting from the defendant's conduct may suffice, for in a motion to dismiss …." *Id.*

Turning to the factual allegations contained in the Plaintiffs' adversary complaint, AFC avers that, prior to bankruptcy, Parkway entered into an inventory financing agreement with AFC whereby AFC agreed to loan Parkway cash to finance Parkway's purchase of automobiles. AFC avers that Parkway purchased numerous motor vehicles using the financing provided by AFC under the inventory financing agreement (the "<u>AFC Motor Vehicles</u>"). AFC avers that Parkway granted it a security interest in all of its equipment and inventory, including its inventory of motor vehicles. AFC avers that it properly perfected this interest by filing a financing statement on or about September 28, 1999, in compliance with Texas law. *See* Tex. Bus. & Comm. Code § 9.101 *et seq.* AFC, therefore, claims that it has a perfected security interest in all motor vehicles held for lease or sale by Parkway (the "<u>Inventory Motor Vehicles</u>").

DSC avers that it is also a secured creditor of Parkway. DSC avers that it has a secured interest in all of Parkway's assets and properties, including all equipment, vehicles, vehicle parts and inventory. DSC avers that it properly perfected this interest by filing a financing statement on or about November 2, 2005, in compliance with Texas

law.  *See* TEX. BUS. & COMM. CODE § 9.101 *et seq*.  DSC avers that, thereafter, it provided at least $95,840 financing to Parkway for the purchase of motor vehicles (the "DSC Inventory Motor Vehicles").  DSC, therefore, claims that it has a perfected secured interest in the DSC Inventory Motor Vehicles.

The Plaintiffs aver that, during January 2007, Huffines sold and/or transferred the Huffines Vehicles to Parkway.  The Plaintiffs aver that the Huffines Vehicles became Parkway's inventory.  The Plaintiffs, therefore, claim that the Huffines Vehicles are subject to AFC's first priority secured interest and DSC's second priority secured interest in Parkway's inventory.

The Plaintiffs aver that DAA identified Parkway as the seller of 57 motor vehicles (the "Manheim Vehicles") auctioned by DAA in January 2007.  AFC avers that it has been paid for only two of these vehicles, and DSC avers that it has been paid for only four of these vehicles.  AFC and DSC are seeking the remaining sales proceeds of the Manheim Vehicles from DAA to the extent the proceeds are held by DAA or, alternatively, from Huffines or other unknown individuals or entities to the extent the proceeds are held by them.

AFC avers that, after Huffines obtained a judgment in the interpleader action filed by Insurers Indemnity Corporation, AFC became aware that Huffines may have retained proceeds related to the sale or disposition of the Huffines Vehicles, which constituted Parkway's inventory.  In particular, AFC and DSC aver that Huffines' statements in connection with this bankruptcy case indicate that DAA sold some or all of the Huffines Vehicles that were the subject of the state court lawsuit.  AFC and DSC aver that Huffines' statements also indicate that these proceeds were paid directly by DAA to

Huffines.   AFC avers that Huffines responded to its inquiries by contradicting its statements in the interpleader action.

AFC and DSC aver that they have been unable to locate and liquidate the Huffines Vehicles or the Manheim Vehicles (with the exception of the six vehicles previously mentioned).   The Plaintiffs aver that no Huffines Vehicles, Manheim Vehicles, or corresponding proceeds from their sale were listed as property of Parkway's bankruptcy estate.   The Plaintiffs allege that Huffines and DAA may owe to AFC, DSC, and/or the bankruptcy estate as much as $706,208.

The Plaintiffs have attached several documents to their adversary complaint. With respect to AFC's claims, AFC has attached a copy of the Demand Promissory Note and Security Agreement between AFC and Parkway as well as copies of the Term Sheet for Promissory Note and Security Agreement, the Power of Attorney executed by Parkway, the Unconditional and Continuing Guaranty executed by Parkway's president and vice president, the financing statement filed by AFC on September 28, 1998, and a copy of a financing statement amendment.   With respect to DSC, DSC has attached a copy of the financing statement filed on November 2, 2005, and a payment receipt.   The Plaintiffs also have attached a copy of Huffines' state court petition, a copy of the answer filed by Huffines in the interpleader action filed in this Court, and a copy of the judgment in favor of Huffines entered in the interpleader action, among other things.

### C. AFC's Standing in this Case

The Defendants focus on the documents referenced by and attached to the Plaintiffs' adversary complaint in their Motion to Dismiss.   The Defendants argue that these documents demonstrate that AFC is not a creditor of Parkway – secured or

10

unsecured –and, therefore, that AFC has no cause of action against the Defendants as a matter of law.  In particular, the Defendants argue that AFC lacks standing because the financing statements attached to the complaint list its name as "Automotive Finance Corp. BR 80."  The Defendants also argue that AFC lacks standing because each page of the Demand Promissory Note and Security Agreement between AFC and Parkway is stamped with the following language:  "THIS RECEIVABLE HAS BEEN SOLD TO AFC FUNDING CORPORATION AND AN INTEREST THEREIN HAS BEEN GRANTED TO HARRIS NESBIT CORP. AS AGENT."

In their reply to the Plaintiffs' response to their Motion to Dismiss, the Defendants further argue that AFC's lack of standing prevents AFC from amending its complaint.  The Defendants' argument presumes that AFC's standing is defective as a matter of fact, because AFC is not actually a creditor of Parkway, and not merely as to form.  Amendment is allowed for defective allegations of jurisdiction, with some limitations, while amendment of a complaint may not be allowed for defective jurisdiction itself.  *See, e.g., Summit Office Park v. United States Steel Corp.,* 639 F.2d 1278 (5th Cir. 1981).

The Defendants' argument regarding AFC's status as a creditor of Parkway strikes at the heart of Count 1 of the adversary complaint in which AFC requests a declaratory judgment regarding its secured interest in Parkway's assets.   When a challenged basis of standing is also an element of the cause of action, as in this case, a court should "limit the jurisdictional inquiry to facial scrutiny and reserve factual scrutiny for the merits."  *Xerox Corp. v. Genmoora Corp.,* 888 F.2d 345, 350 (5th Cir. 1989). More specifically, "the proper course of action ... is to find that jurisdiction exists and

deal with the objection as a direct attack on the merits of the plaintiff's case." *Williamson v. Tucker,* 645 F.2d 404, 415 (5th Cir. 1981). Thus, if a case survives facial scrutiny, factual scrutiny should be reserved for a Rule 12(b)(6) examination. *See Lewis v. Knutson,* 699 F.2d 230, 237 (5th Cir. 1983).

Here, the Defendants argue that AFC's claims cannot survive facial scrutiny due to the contradictions between the allegations in the complaint and the documents attached to the complaint. AFC attempts to explain or resolve these contradictions by altering its allegations of fact in support of its standing. In its response to the Motion to Dismiss, AFC argues that it has standing in this action because (1) AFC is both authorized and obligated to pursue collection of Parkway's collateral pursuant to AFC's purchase and sale agreement with AFC Funding Corporation; and (2) AFC's secured status is derived from its capacity as AFC Funding Corporation's servicing agent as well as its own capacity as a secured party. AFC attempted to submit two affidavits from James E. Money II in support of its new allegations regarding its standing at the hearing on the Motion to Dismiss. In one affidavit, executed by Mr. Money as the Vice President of Finance and Treasurer for AFC, Mr. Money describes the chain of documents supporting AFC's standing. In the other affidavit, executed by Mr. Money as the Treasurer for AFC Funding Corporation, Mr. Money states that AFC Funding Corporation authorizes the continuation of this adversary proceeding and agrees to be bound by its result.

The Defendants object to the Court's consideration of these affidavits because their Motion to Dismiss is a facial attack under Rule 12(b)(1) and, as such, the Court's inquiry is limited to the fact of the complaint, the documents attached to the complaint, and undisputed facts of which this Court can take judicial notice. In addition, the

Defendants argue that AFC should not be permitted to amend its complaint to include the new allegations of fact contained within Mr. Money's affidavits because "[a] plaintiff cannot rely on the amendment procedure under [Rule] 15 to substititute a new plaintiff in order to cure the lack of subject matter jurisdiction." *Levin v. Minn. Life Ins. Co.*, 2008 WL 2704772, *6 (S.D. Tex. 2008) (quoting *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 453 (5th Cir. 1995)).

The Defendants' argument opposing the amendment of the Plaintiffs' complaint confuses the substitution of a new plaintiff with the substitution of the real party in interest. In *Summit Office Park*, for example, Summit Office Park was an indirect purchaser of reinforcing steel bar materials. It brought suit against the original seller, individually and on behalf of a putative class of indirect purchasers, under the Sherman and Clayton Acts. While the action was pending, the Supreme Court held that only direct purchasers have a cause of action under the antitrust laws. The plaintiff then moved to amend the complaint to substitute two new plaintiffs, both of whom were direct purchasers, and to alter the complaint's allegations to meet the requirements of the Supreme Court's decision. The Fifth Circuit held that since the initial plaintiffs had no valid cause of action, they could not file the desired amendment. *Summit Office Park*, 639 F.2d at 1282.

The holding in *Summit Office Park* by its terms extends "only" to instances where a plaintiff who lacks standing to assert a claim attempts to substitute "new plaintiffs, a new class, and a new cause of action." *Id.* In this case, by contrast, AFC and DSC have filed an adversary complaint that includes detailed allegations regarding their alleged secured interests in Parkway's assets. AFC expanded upon these allegations in response

13

to the Motion to Dismiss by asserting that it also has standing as the servicer for AFC Funding Corporation. *See, e.g., Greer v. O'Dell,* 305 F.3d 1297, 1303 (11th Cir. 2002) (finding that a mortgage servicer had standing to file a proof of claim because under servicing agreement the servicer was obligated to file a proof of claim on behalf of the mortgage holder); *In re Woodberry,* 383 B.R. 373, 379 (Bankr. D. S.C. 2008) (holding that mortgage servicers are parties in interest with standing by virtue of their pecuniary interest in collecting payments under the terms of the notes and mortgages they service); *Bankers Trust (Delaware) v. 236 Beltway Inv.,* 865 F.Supp. 1186, 1191 (E.D. Va. 1994) (holding that both the lender and servicer had standing to sue on mortgagor's default even though the servicer was not the holder of the mortgage); *In re Tainan,* 48 B.R. 250, 252 (Bankr. E.D. Pa. 1985) (determining that mortgage servicer was a party in interest for purposes of a relief from stay proceeding). In contrast to *Summit Office Park*, the operative facts and the causes of action asserted in the Plaintiffs' complaint are not changed by the new allegations. Rules 15 and 17(a) were designed to address precisely this situation. *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 19 (2nd Cir. 1997) ("The history of the Rules makes clear not only that Rule 15 was meant to be generally applicable to a proposed change of plaintiffs, but that in this regard Rule 17(a) is implicated as well ….).

The Plaintiffs in this case have invoked Rule 15 in their opposition to the Motion to Dismiss. Rule 15 of the Federal Rules of Civil Procedure states that a court "should freely give [leave to amend] when justice so requires." As the Fifth Circuit has often stated, a complaint is not subject to dismissal unless "it appears to be a certainty that the plaintiff cannot possibly be entitled to relief under any set of facts which could be proved

14

in support of its allegations.   Even then, a court ordinarily should not dismiss the complaint except after affording every opportunity (for) the plaintiff to state a claim upon which relief (can) be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955).   "The federal rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

"Although Rule 15 evinces a bias in favor of granting leave to amend, it is not automatic."   *Southmark Corp. v. Schulte Roth & Zabel* (*In re Southmark Corp.*), 88 F.3d 311, 314 (5th Cir. 1996) (quotation marks and citation omitted).   Under Rule 15, the courts consider such equitable factors as "(1) undue delay; (2) bad faith; (3) dilatory motive on the part of the movant; (4) repeated failure to cure deficiencies by any previously allowed amendment; (5) undue prejudice to the opposing party; and (6) futility of amendment."   *Ellis,* 394 F.3d at 268.   Here, the Plaintiffs have not previously amended their complaint, acted in bad faith, or unduly delayed in making their request to amend their adversary complaint.   Moreover, amendment of the complaint at this initial stage of the proceeding will not unduly prejudice the Defendants.

Having reviewed the complaint, the Defendants' Motion to Dismiss, and the Plaintiffs' response to the Motion to Dismiss, and having considered the arguments presented by the parties at the hearing on the Motion to Dismiss, it appears to the Court that the complaint is somewhat deficient in setting forth all of the facts supporting AFC's standing.   The Court finds that, when looking only to the sufficiency of the pleadings and not the underlying evidence as required in a facial attack under the Rule 12(b)(1)

standard, amendment of the complaint would not be futile. *Cf: Jamieson ex rel. Jamieson v. Shaw,* 772 F.2d 1205, 1208-09 (5th Cir. 1985) (recognizing that denial of a motion for leave to file an amended complaint based on the futility of the proposed amended complaint "tends to blur the distinction between analysis of the procedural context under Rule 15(a) and analysis of the sufficiency of the complaint under Rule 12(b)(6)"). The Court is not compelled to dismiss the case under these circumstances, but may deny the Defendants' Motion to Dismiss under Rule 12(b)(1) and direct AFC to amend the complaint, or dismiss with leave to amend. *See, e.g., Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (reversing the dismissal of a case and remanding with the order that the dismissal be entered without prejudice to the plaintiffs' rights to submit an amended complaint within a reasonable time).

Whether AFC and DSC have properly perfected an interest in Parkway's property under Texas law as shown by the documents attached to the Plaintiffs' complaint is an issue that may be appropriately addressed in the context of a Rule 12(b)(6) or 56 motion. Likewise, with respect to the merits of the Defendants' objections to the affidavits submitted by the Plaintiffs, the Court prefers to address those issues in the context of a Rule 12(b)(6) motion or a Rule 56 motion, where the procedural safeguards are more clear. While at the pleading stage, as in this case, general factual allegations may suffice to overcome a facial attack on a complaint. *See Lujan* 504 U.S. at 561 (addressing a motion to dismiss for lack of standing and holding that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim.") (citation omitted). For all the foregoing

16

reasons, the Court concludes that the appropriate action is to deny the Motion to Dismiss under Rule 12(b)(1) and require AFC to amend their adversary complaint within 21 days. *See* FED. R. BANKR. P. 7008 and 7015.

### B. DSC's Standing in this Case

Turning to DSC, the Defendants argue that DSC cannot establish standing because this Court previously determined that DSC does not have a secured claim. Collateral estoppel applies when (1) the issue at stake in the pending litigation is the same as the issue in the initial litigation; (2) the issue was actually litigated; and (3) the determination of the issue in the initial litigation was a necessary part of the judgment. *Pace v. Bogalusa City Sch. Bd.,* 403 F.3d 272, 290 (5th Cir. 2005). Offensive collateral estoppel requires a fourth equitable element that there exists "no special circumstance that would render preclusion inappropriate or unfair." *Copeland v. Merrill Lynch & Co. Inc.,* 47 F.3d 1415 (5th Cir. 1995). Estoppel is an affirmative defense, *see* Rule 8(c), and the burden of proof on the issue of estoppel is on the Defendants. *See Smith v. U.S.,* 328 F.3d 760 (5th Cir. 2003) (the burden of proof on the issue of estoppel is on the party asserting estoppel).

Here, the Defendants' estoppel argument arises from the Chapter 7 trustee's objection to the proof of claim filed by DSC. There is no dispute that DSC did not respond to the Chapter 7 trustee's objection. The Court's docket reflects that no hearing was held on the objection, and the Court entered a default order sustaining the Chapter 7 trustee's objection pursuant to this Court's Local Bankruptcy Rule 9014(b)(3).

In appeals involving the effect of state court judgments, the Fifth Circuit has discussed the various kinds of default judgments that may satisfy the "actually litigated"

requirement.  *See, e.g., Garner v. Lehrer* (*In re Garner*), 56 F.3d 677, 680 (5th Cir. 1995) (Texas post-answer default judgment); *Gober v Terra + Corporation (In re Gober),* 100 F.3d 1195, 1204-05 (5th Cir. 1996) (Texas post-answer default judgment, after answer was struck); *Caton v. Trudeau* (*In re Caton*), 157 F.3d 1026, 1028-29 (5th Cir. 1998) (Illinois default judgment).  Courts generally hold that no-answer default judgments fail to meet the "actually litigated" prong of the issue preclusion test.  *See Gober*, 100 F.3d at 1204 (collecting authority).  The Defendants do not contend that this case -- involving the preclusive effect of this Court's order -- requires a different rule giving preclusive effect to no-answer defaults.

The Chapter 7 trustee in this case objected to DSC's secured claim because the assets in which it claimed an interest had not physically come into the estate for administration as part of Parkway's bankruptcy case.  Under the Bankruptcy Code, creditors who have valid liens against property of the estate are entitled to the value of their allowed secured claims in liquidation cases.  *See* 11 U.S.C. § 725.  However, such a lien "is a secured claim to the extent of the value of such creditor's interest *in the estate's interest* in such property ...."  11 U.S.C. § 506(a)(1).  To determine DSC's entitlement to a *distribution* from the liquidation of the assets of Parkway's bankruptcy estate, then, the Chapter 7 trustee in this case filed an objection to DSC's secured claim.  The Court's order sustaining the Chapter 7 trustee's objection states that DSC's claim "is disallowed as a secured claim."

The extent and validity of DSC's alleged lien on Parkway's assets was not actually litigated in connection with the Chapter 7 trustee's objection to its claim.  *See Blonder-Tongue Lab. v. Univ. of Illinois Found.,* 402 U.S. 313, 328 (1971) (in order to

further interests of finality and judicial economy, issue preclusion doctrine requires that litigant be afforded "one full and fair opportunity for judicial resolution" of issue). Moreover, the issues raised in connection with the Chapter 7 trustee's claim objection are not the same issues raised in this adversary proceeding.  *See Meza v. General Battery Corp.,* 908 F.2d 1262, 1265 (5th Cir. 1990) (among other requirements, the doctrine of res judicata requires that "the same cause of action must be involved in both cases.").  The Court was not required to and did not determine the extent or validity of DSC's lien in order to sustain the Chapter 7 trustee's objection to its claim.

Significantly, an adversary proceeding, with all of the attendant due process protections, must be initiated for a determination of the extent and validity of a lien.  *See* FED. R. BANKR. P. 3007(b) and 7001(2).  An objection to a proof of claim initiates a contested matter, *see* Bankruptcy Rule 9014, which is designed for the adjudication of simple issues on an expedited basis.  *See* 9 COLLIER ON BANKRUPTCY 9014.05 (15th ed. rev. 2007).  If an issue must be raised through an adversary proceeding, courts have generally held that it is not part of the contested matter, and, unless it is actually litigated, an order entered in the contested matter will not have preclusive effect.[1]  *See, e.g., In re Hanson,* 397 F.3d 482 (7th Cir. 2005) (holding that student loans may not be discharged through a declaration of "undue hardship" in a Chapter 13 plan); *Cen-Pen Corp. v. Hanson,* 58 F.3d 89, 93 (4th Cir. 1995) ("confirmation of a ... plan is res judicata only as to issues that can be raised in the less formal procedure for contested matters ...

---

[1] The Court is aware of a recent lack of consensus among the circuits on this issue.  *See SLW Capital LLC v. Ruffin, et al. (In re Mansaray-Ruffin)*, 530 F.3d 230 (3rd Cir. 2008) (allowing discharge of home mortgage through the Chapter 13 plan), and *In re Espinosa v. United Student Aid Funds, Inc.,* 553 F.3d 1193 (9th Cir. 2009) (allowing discharge of student loans through Chapter 13 plan), *cert. granted*, -- S.Ct. – (June 15, 2008).

confirmation generally cannot have [a] preclusive effect as to [matters] which must be raised in an adversary proceeding."); *Sun Finance Company v. Howard (In re Howard)*, 972 F.2d 639 (5th Cir. 1992) (holding that "a Chapter 13 plan which purports to reduce or eliminate a creditor's secured claim is res judicata [sic] as to that creditor only if the debtor has filed an objection to the creditor's claim. If no objection is filed to a secured claim, the creditor is entitled to rely upon its lien and not participate in the bankruptcy proceedings."); *In re Beard,* 112 B.R. 951, 956 (Bankr. N.D. Ind. 1990) ("If an issue must be raised through an adversary proceeding it is not part of the confirmation process and, unless it is actually litigated, confirmation will not have a preclusive effect.").

The Court, exercising its inherent authority to interpret and enforce its own orders, interprets its default order sustaining the Chapter 7 trustee's objection to DSC's claim as addressing DSC's right to a distribution from Parkway's estate but not DSC's right to assert a secured claim against Parkway.  The issue of the secured status of DSC was not actually litigated as part of the claims allowance process, and preclusion would be inappropriate and unfair under the circumstances.  The Court, therefore, concludes that the Defendants have failed to establish that this Court's prior order sustaining the Chapter 7 trustee's objection to the claim filed by DSC has preclusive effect with respect to the causes of action asserted by DSC in this adversary proceeding.

### C. Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) allows dismissal of a case when the plaintiff fails to state a claim upon which relief can be granted.  Under Rule 12(b)(6), a court must decide whether the facts alleged, if true, would entitle the plaintiff to some legal remedy.  *See Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  However, "the tenet that a court must accept a

complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1940 (May 18, 2009) (citing *Twombly*, 550 U.S. at 555). "Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Id.* (citing *Twombly*, 550 U.S. at 555).

Here, the grounds for the Defendants' Rule 12(b)(6) motion are the same as the grounds for their Rule 12(b)(1) motion. For the reasons previously discussed, the Plaintiffs will be permitted to amend their complaint to correct any deficiency regarding their factual allegations in support of AFC's standing claims. In light of the Court's decision to allow amendment of the Plaintiffs' complaint, consideration of the Motion to Dismiss pursuant to Rule 12(b)(6) would be premature at this time.

### III. WITHDRAWAL OF THE REFERENCE

Pursuant to 28 USC § 157(a), the United States District Court for the Eastern District of Texas has generally referred all cases under Title 11 and all proceedings "arising under" Title 11 or "arising in" or "related to" a case under Title 11 to the bankruptcy judges for the Eastern District of Texas. However, without consent of the parties, a bankruptcy judge lacks the authority to conduct a jury trial. *See In re Clay,* 35 F.3d 190, 196-97 (5th Cir. 1994). DAA has requested a jury trial. Accordingly, if DAA is entitled to a jury trial, the reference must be withdrawn.

The Seventh Amendment provides the right to a jury trial in cases in which the value in controversy exceeds twenty dollars and the cause of action is to enforce statutory rights that are at least analogous to one which was tried at law in the late 18th century

English courts. *See City of Monterey v. Del Monte Dunes,* 526 U.S. 687, 708 (1999); *Lorillard v. Pons,* 435 U.S. 575 (1978). Suits "at law" refers to "suits in which legal rights were to be ascertained and determined" as opposed to "those where equitable rights alone were recognized and equitable remedies were administered." *Granfinanciera, S.A. v. Norberg,* 492 U.S. 33, 41 (1989) (quoting *Parsons v. Bedford,* 3 Pet. 433, 477 (1830)). This analysis requires two steps: (1) a comparison of the "statutory action to 18th century actions brought in the courts of England prior to the merger of the courts of law and equity"; and (2) whether the remedy sought is "legal or equitable in nature." *Granfinanciera, S.A.,* 492 U.S. 33, 42 (quoting *Tull v. U.S.,* 481 U.S. 412, 417-18 (1987)). "The second stage of this analysis is more important than the first." *Id.* at 42.

The Chapter 7 trustee's claim for the recovery of alleged preferential transfers is a suit at law for which the Seventh Amendment right to a jury trial applies. The Supreme Court has directly held that "[t]here is not dispute that actions to recover preferential or fraudulent transfers were often brought at law in late 18th-century England." *Id.* at 43. Additionally, AFC and DSC's claims alleging tortious interference with contract and civil conspiracy are claims for which DAA has a Seventh Amendment right to a jury trial. *In re Jensen,* 946 F.2d 369, 371 (5th Cir. 1991) (overruled on other grounds).

The Chapter 7 trustee's turnover claim is an equitable claim to which the Seventh Amendment right to jury trial does not attach. *Granfinanciera, S.A.*, 492 U.S. at 44; *In re Jensen,* 946 F.2d at 372. Nevertheless, "[i]f a legal claim is joined with an equitable claim, the right to a jury trial on the legal claim, including all issues common to both claims, remains intact." *Curtis v. Loether,* 415 U.S. 189, 196 n. 11 (1974). The Plaintiffs' various claims in this case arise from and are intertwined within the same

22

nucleus of common facts, and the Plaintiffs are seeking a money judgment from the Defendants, among other things. The Court in *Granfinanciera, S.A.* found that a request for a money judgment strongly indicates that the claim should be denominated as legal rather than equitable. *See Granfinanciera, S.A.,* 492 U.S. at 47; *Dairy Queen Inc. v. Wood,* 369 U.S. 469, 476 (1962).

Even if the parties in this case were to consent to trial before this Court, the District Court has not expressly authorized this Court to conduct jury trials, and, as a consequence, this Court lacks the authority and the infrastructure to conduct a jury trial. The District Court is authorized by 28 USC § 157(d) to withdraw the reference as to any case or controversy "for cause shown."  In light of DAA's pending jury demand, the withdrawal of the reference is at least permissive.  *See Granfinanciera, S.A.,* 492 U.S. at 42) (discussing a bankruptcy court litigant's Seventh Amendment right to a jury trial). *See generally* 1 NORTON BANKR. L. & PRAC. 2d § 8:1 (discussing mandatory and permissive withdrawal from bankruptcy court to district court).  Further, it is in the interest of judicial economy to withdraw the reference, considering the necessity for *de novo* review under 28 U.S.C. § 157(c)(1) if this Court hears "non-core" claims such as conspiracy and tortious interference with contract.[2]  For the foregoing reasons, consistent with *Northern Pipeline Constr. v. Marathon Oil Pipe Line Co.*, 458 U.S. 50 (1982) and *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999-98 (5th Cir. 1985), this Court recommends that the District Court withdraw the reference of this adversary

---

[2] The Bankruptcy Act of 1978 established the current bankruptcy court system and broadly granted jurisdiction to bankruptcy judges over all matters arising in or under the Bankruptcy Code or relating to bankruptcy cases.  In *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co,* 458 U.S. 50 (1982), the Supreme Court struck down as too far-reaching the broad assignment of jurisdiction to bankruptcy judges. Congress responded to *Marathon* by distinguishing between "core" and "non-core" proceedings in 28 U.S.C. § 157.  Relying on *Marathon,* the Fifth Circuit has held that "controversies that do not depend on the bankruptcy laws for their existence -- suits that could proceed in another court even in the absence of bankruptcy -- are not core proceedings." *Wood v. Wood (In Re Wood),* 825 F.2d 90, 96 (5th Cir. 1987).

proceeding pursuant to 28 U.S.C. §157(d) and that this adversary proceeding proceed to trial by jury before the District Court.

## IV. CONCLUSION

The Court concludes that the Motion to Dismiss should be denied.  The Plaintiffs should have an opportunity to amend their adversary complaint and, following such amendment, the Court recommends that the District Court withdraw the reference of this adversary proceeding.   The Court will enter a separate order consistent with this Memorandum Opinion.

Signed on 07/10/2009

_____   SR

ROBERT C. McGUIRE
UNITED STATES BANKRUPTCY JUDGE